```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

BRIAN HOLOFCHAK,              )
                              )
            Plaintiff,        )
                              )
      v.                      )     No.  09 C 5204
                              )
MICHAEL J. ASTRUE, Commissioner )
of the Social Security        )
Administration,               )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER

Brian Holofchak ("Holofchak") seeks judicial review, pursuant to Social Security Act ("Act") §405(g)("Section 405(g)"),[1] of the final decision of Commissioner of Social Security Michael Astrue ("Commissioner") that denied his claim for disability insurance benefits (hereafter simply "benefits"). Holofchak has moved either for summary judgment under Fed. R. Civ. P. ("Rule") 56 or for a remand for reconsideration in light of additional evidence under sentence six of Section 405(g).[2] For the reasons stated hereafter, his motion for summary judgment is denied, but his alternative motion for remand is granted.

---

[1] No other sections of the Act are referred to in this opinion. All portions of the applicable regulations, which appear in 20 C.F.R., are cited as "Reg. §--." Citations to the administrative record will take the form "R. --."

[2] In a variant on what in this Court's experience has been the invariable practice of all prior Commissions (Commissioners?) as well as the incumbent, here Commissioner has not filed a formal cross-motion for summary judgment. Instead his response seeks what is essentially the legal equivalent: affirmance of the decision by the Administrative Law Judge ("ALJ").

**Procedural Background**

On June 6, 2005 Holofchak filed an application for benefits, alleging that he had become disabled on April 7 of that year (R. 234-36). That application was initially denied on August 9, 2005 (R. 196), and it was again denied upon reconsideration on October 19, 2005 (R. 191). Invoking his right to further review, Holofchak requested and received a hearing ("Hearing") on March 13, 2008 before ALJ Peter Caras (R. 179). Represented by counsel, Holofchak testified at the Hearing, as did his wife Soledad Holofchak and vocational expert Ronald Malik.

ALJ Caras' April 2, 2008 decision concluded that Holofchak was not disabled within the meaning of the relevant statutes and regulations and was thus ineligible for benefits (R. 165). That decision became Commissioner's once the Appeals Council denied Holofchak's request for review on July 1, 2009 (R. 4). Then on August 25, 2009 Holofchak filed a timely complaint for judicial review, challenging Commissioner's decision on four grounds: (1) that ALJ Caras erred in proceeding to decision without obtaining updated medical evidence, (2) that such additional evidence warrants remand, (3) that ALJ Caras impermissibly drew his own conclusions as to the impact of Holofchak's impairments and limitations and (4) that the denial is not supported by substantial evidence because the jobs that ALJ Caras identified are inconsistent with his findings as to Holofchak's functional

capacity.

## Factual Background

Holofchak's Medical and Employment Background

In 2000, while working as a crewman for a building contractor, Holofchak fell off a roof and sustained several injuries, including fractures to his legs and right wrist and compression fractures in his lumbar spine (see, e.g., R. 360-428). He underwent several surgeries to repair the injuries to his legs and wrist shortly after the accident (R. 370-73, 429-30). In 2002 his right wrist was fused as a result of the accident (R. 742-44)). Holofchak received physical therapy following the accident and each of his surgeries and was prescribed pain medication (see, e.g., R. 454, 492-93, 626-27). He has remained on pain medication since the accident (R. 938).

Holofchak's lumbar compression fractures resulted in some disc degeneration (R. 732). In 2004 a back surgeon, Dr. Alexander Ghanayam, indicated that Holofchak might require spinal surgery if he later developed spinal stenosis, though he did not recommend surgery at that time (id.). Holofchak continued to see his doctors about his pain and continued to take pain medication along with anti-depressants and medication for migraines, from which he has suffered most of his life (see, e.g., R. 374).

Holofchak never returned to work as a crewman after his accident (see, e.g., R. 263). Instead he took a full-time job as

3

a cashier at Wal-Mart in April 2003 (id.). But because his job as a cashier required him to stand in one place for extended periods of time, he was unable to continue in that position (R. 929-30). Wal-Mart then moved Holofchak to a position on the sales floor, but after some time he found that job also to be too difficult to perform because of pain in his back and legs (R. 930). In April 2005 Holofchak reduced his hours to four hours a day due to his pain (R. 285), and in June 2005 he stopped working altogether (R. 930).

Holofchak's Evidence and Hearing Testimony

In support of his claim for benefits, Holofchak submitted medical records dated through 2005 to Commissioner (see generally R. 180-888). Those records referred to his accident and his subsequent surgeries, therapies and other treatments. But they did not include the results of an MRI that he underwent in November 2005 that showed disc herniation and other degenerative changes in the lumbar spine (R. 908-09). Nor did they include diagnostic or treatment records by Dr. Ronald Michael, who began seeing Holofchak in 2006 and continued to treat him through at least 2008 (see R. 158, 889-901). In fact, there was no medical evidence in the record dated after 2005 other than a December 2006 note from Dr. Glen Ricca attesting that Holofchak was

4

disabled (R. 885).[3]

During the Hearing ALJ Caras asked Holofchak about his current treatment (R. 939). Holofchak responded that he was currently seeing Dr. Michael about his back (R. 940). Though no medical records from Dr. Michael had been submitted, ALJ Caras did not pose any follow-up questions about Dr. Michael or about his treatment of Holofchak (see id.). Instead ALJ Caras proceeded to ask Holofchak questions about his functional capacities, including how much help he was able to give his wife around the house (R. 939-40). Other than a later line of questioning about what specific medications Holofchak was taking, ALJ Caras asked no other questions about Holofchak's medical treatment (see R. 929-47).

Holofchak submitted the missing medical records with his request for review by the Appeals Council.[4] They reflect that Dr. Michael first evaluated Holofchak in June 2006, at which time he noted that Holofchak's pain was becoming increasingly incapacitating (R. 896). He ordered a myelogram, discogram and CT scan, each of which confirmed spinal abnormalities (R. 898,

---

[3] Holofchak mentioned both the MRI and Dr. Michael in his claim documents (R. 354).

[4] This Court reviewed those records for the limited purpose of determining whether they constitute new evidence under sentence six of Section 405(g) or if the ALJ or the Appeals Council committed legal error by respectively (1) failing to develop the record so as to include them and (2) refusing to reconsider Holofchak's claim in light of those records.

5

903-07). Dr. Michael eventually had Holofchak undergo plasma disc decompression treatments, but he suspected that spinal surgery would eventually be necessary (R. 896-98). In October 2008, six months after the Hearing, Holofchak did in fact undergo surgery in which a laminectomy and lumbar fusion were performed (R. 14). He was found to have spondylolisthesis in his lumbar spine, with bilateral severe foraminal stenosis with facet hypertrophy,[5] as well as root compression in the lumbar spine (R. 12, 21).

**Standard of Review**

Any decision by Commissioner will be upheld on judicial review under Section 405(g) "if it is supported by substantial evidence and is free of legal error" (Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002)). This Court reviews de novo any legal conclusions that are a part of Commissioner's final decision (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)).[6] But errors of law may warrant reversal or remand notwithstanding any factual support for Commissioner's decision (Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

---

[5] In laymen's terms, Holofchak's lumbar vertebrae were misaligned, causing the spinal canal to narrow and the spinal cord and nerves to be compressed.

[6] This Court likewise reviews de novo, for legal error, any denials of review by the Appeals Council (Getch v. Astrue, 539 F.3d 473, 483-84 (7th Cir. 2008)).

6

**Necessity for Remand**

Because Social Security proceedings are non-adversarial in nature, "the ALJ has a duty to develop a full and fair record" (Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000)). That duty includes the responsibility to make sure the record contains updated medical information (Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009)). Though the ALJ may assume that a claimant who is represented by counsel has presented his best case for benefits (Glenn v. Sec'y of Health & Human Servs., 814 F.2d 387, 391 (7th Cir. 1987)), a significant--that is, prejudicial--omission in the record signals that the ALJ failed in his own duty to develop the record adequately (Nelms, 553 F.3d at 1098). Nelms, id. found a two-year gap in medical evidence to be significant in that sense.

Holofchak was represented by counsel from at least December 2005 onward (R. 183-84). Both he and his counsel were directed more than once to submit any additional supportive evidence to Commissioner before the Hearing (see R. 206). Moreover, at the start of the Hearing ALJ Caras asked Holofchak's counsel if the record was complete and could be closed out, with counsel replying that it was complete and could be closed (R. 929).

Despite those facts, it should have been clear to ALJ Caras that there were significant gaps in the record and that it needed further development. First, Holofchak noted in his claim forms

7

that he was being treated by Dr. Michael (R. 354), and he also reported that he had undergone an MRI ordered by Dr. Ricca (R. 324). But at the time of the Hearing the record contained neither treatment records from Dr. Michael nor the MRI results--and the ALJ did not ask Holofchak or his counsel about those missing records. Instead he asked only if the record was complete and could be closed (R. 929).

Second, when ALJ Caras asked Holofchak about his current medical treatment, Holofchak responded that he was seeing Dr. Michael for his back problems (R. 940). But the ALJ did not ask any follow-up questions about Dr. Michael or what treatment he had prescribed to Holofchak. In fact, ALJ Caras did not ask what sort of treatment Holofchak had received from <u>anyone</u> over the prior two years.

That Holofchak was represented by counsel does not absolve ALJ Caras of his duty to make sure the record was complete. It is a "well-settled proposition regarding social security disability hearings...that [i]t is a basic obligation of the ALJ to develop a full and fair record" (<u>Thompson v. Sullivan</u>, 933 F.2d 581, 585 (7th Cir. 1991) (alteration in original, internal quotation marks omitted)). Although that duty is especially compelling in cases (unlike the one presented here) where the claimant is unrepresented by counsel, the basic obligation persists across all social security cases, and the "[f]ailure to

8

fulfill this obligation is 'good cause' to remand for gathering of additional evidence" (Smith, 231 F.3d at 437).

Given Holofchak's explicit mention of his more recent treatment--including a diagnostic MRI--and a two-year gap in the medical records, ALJ Caras should have realized the record was incomplete and that Holofchak was not, in fact, putting on his best case.  That, combined with Holofchak's earlier references to the missing documentation, constitutes a strong indication that the ALJ failed to meet his basic obligation.  Appropriate efforts to develop the record further must therefore be undertaken on remand.

Accordingly this case is reversed and remanded under sentence four of Section 405(g)(see Richmond v. Chater, 94 F.3d 263, 268-69 (7th Cir. 1996)).  On the remand particular attention should be paid to the evidentiary gaps in Holofchak's treatment records.

With a remand thus called for in any event, it would scarcely seem appropriate for Commissioner to be compelled to deal with less than a full evidentiary deck on that remand.  To that end this opinion turns to consideration of Section 405(g)'s sentence six, which permits a remand for reconsideration in light of new evidence.  In that respect Holofchak has presented two separate batches of additional evidence:  (1) the treatment records from Dr. Michael and (2) the medical records of his

9

October 2008 surgery.

Under sentence six new evidence may be considered if it is material and if there is good cause for the claimant's failure to incorporate it into the record at the administrative hearing (Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1996)). And Perkins, id. provides the relevant definitions of those terms:

> "[M]ateriality" means that there is a "reasonable probability" that the Commissioner would have reached a different conclusion had the evidence been considered, and "new" means evidence "not in existence or available to the claimant at the time of the administrative hearing."

As that definition reflects, evidence will not be considered "new" where it is based "entirely on evidence that had long been available" (Perkins, id.). But where post-hearing evidence "document[s] impairments of which Plaintiff had been complaining for years" (Bush v. Astrue, 571 F. Supp. 2d 866, 875 (N.D. Ill. 2008)), it can be considered both new and material. To illustrate the distinction, Perkins involved a physician's evaluation of a plaintiff's condition based on medical evidence in existence before the hearing, while Bush involved test results from various medical examinations, conducted shortly after the administrative hearing, that confirmed that plaintiff there had indeed suffered from a variety of impairments.

In those terms a sentence six remand is not available for Holofchak's first batch of evidence, the records of his treatment by Dr. Michael from 2006 to 2008. That evidence was not new--it

was in existence and available to Holofchak at the time of the Hearing. And Holofchak concedes that he did not have good cause for failing to submit the treatment records.[7]

But the evidence regarding Holofchak's spinal surgery <u>does</u> qualify as "new," and Holofchak had the best conceivable cause for not submitting it at the Hearing: that surgery had not yet been performed at that time. And those surgical records further corroborate Holofchak's claim that his condition was worsening, suggesting that there is a "reasonable probability" that Commissioner would have come to a different conclusion had the evidence been available.

On that score ALJ Caras' decision said that there was no objective medical evidence after December 30, 2004 to indicate Holofchak's condition had worsened and that would corroborate his statements regarding the intensity, persistence and limiting effects of his symptoms (R. 173-74). But the surgical records--and indeed the fact of the surgery itself--provide documentation of the degeneration of Holofchak's condition and confirm that Holofchak suffered from spinal stenosis (R. 12, 21).

Holofchak further argues that the Appeals Council made an error of law when it denied review under Reg. §404.970(b). Again, because sentence four warrants reversal and remand in all

---

[7] As stated earlier, Holofchak's failure to have submitted those records does not make the ALJ's independent failure to develop the record non-prejudicial.

11

events, that argument need not be addressed.

It is worth noting, however, that the Appeals Council's finding that the surgical records did not relate back to Holofchak's condition at the time of the administrative hearing is questionable. Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005)(quotation marks and alterations in the original) articulates the relevant standard:

> [T]his court has held that medical records "postdating the hearing" and that "speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration" do not meet the standard for new and material evidence.

It is hard to characterize the surgical records as relating only to Holofchak's condition in October 2008 and not to his condition a mere six months earlier. Nevertheless, as already stated, this Court need not opine definitively as to whether the Appeals Council erred. Instead this opinion can (and does) simply hold that on remand consideration may be given, pursuant to Section 405(g)'s sentence six, to consideration of the new and material evidence as to Holofchak's spinal surgery.

## Conclusion

Because remand is called for in both respects discussed in this opinion, it need not address Holofchak's disputed claims as to ALJ Caras' conclusions regarding Holofchak's functional limitations or as to the ALJ's reliance on the vocational expert's testimony. Holofchak's motion for a definitive summary

12

judgment is unwarranted, and it is denied.  Instead the denial of Holofchak's benefits claim is reversed, his alternative motion to reverse and remand is granted under Section 405(g)'s sentence four, and his motion to remand on other grounds under sentence six is granted as well.[8]

_____
Milton I. Shadur
Senior United States District Judge[9]

Date:   September 28, 2010

---

[8]  This Court is of course well aware of not only the distinctions between those two sentences (see Melkonyan v. Sullivan, 501 U.S. 89, 97-103 (1991)) but also the consequence of that distinction in terms of the timing and allowability of attorney's fees to a prevailing claimant (see Shalala v. Schaefer, 509 U.S. 292 (1993)).  That ramification has not been discussed by the parties, however, and it would be inappropriate for this opinion to deal with it at this time.

[9]  This opinion marks the proverbial swan's song among the matters on which this Court's just-departed law clerk Kristine Devine worked during her year's tenure here in chambers.  As always, Kristine's outstanding work here went beyond the advocates' submissions (both in terms of research and analysis), so as to convey keen insights into the proper ratio decidendi for a decision.  This Court hastens to add (as it invariably does when it is appropriate to pay such a tribute to one of its exemplary law clerks) that it has carefully reworked each sentence in this and other draft opinions produced by Kristine, as well as having read each cited case, so that each end product is this Court's own.  If then any errors have found their way into any final version during the year, the sole responsibility must be laid at this Court's doorstep and not Kristine's.